IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERNESTO A. UC ENCARNACION,<br><br>Petitioner,<br><br>v.<br><br>POLLY KAISER, et al.,<br><br>Respondents. | Case No. 22-cv-04369-CRB<br><br>**ORDER DENYING HABEAS PETITION** |

Petitioner Ernesto Uc Encarnacion asks the Court to prevent Respondents from re-detaining him based on a Board of Immigration Appeals (BIA) decision without first returning him to an immigration judge (IJ) for a bond hearing. See Pet. (dkt. 1). The Court's view of this case has not changed since it denied Petitioner's request for a preliminary injunction. See Transcript (dkt. 21); Show Cause Hearing (dkt. 17); Order Denying MPI (dkt. 18). Although Uc did an extraordinary job of turning his life around while out on bond, and his re-detention may be both disruptive to his recovery and hurtful to the people close to him, he is not entitled to a further bond hearing before an IJ.

I.  **BACKGROUND**[1]

Petitioner was transferred to U.S. Immigration and Customs Enforcement (ICE) custody in February 2020. Uc Decl. (dkt. 1-2) ¶ 14; Mahoney Decl. (dkt. 1-1) ¶ 12. His 2011 removal order was reinstated pursuant to 8 U.S.C. § 1231(a)(5), and, after expressing a fear of returning to Mexico, Uc was placed in proceedings in San Francisco Immigration Court to pursue Withholding of Removal and relief under the Convention Against Torture.

---

[1] The Court included an extensive factual background earlier, see Order Granting TRO (dkt. 11) at 1–6, and will primarily address the case's procedural history here.

Id.; Ex. M (Notice of Referral to Immigration Judge). The reinstated removal order subjected Uc to mandatory detention under 8 U.S.C. § 1231(a)(6).

During his proceedings, Uc appeared before an IJ. Mahoney Decl. ¶ 14. The IJ found Uc not credible, denied all relief, and ordered him removed. Id.; Ex. N (IJ Order in Removal Proceedings). Uc timely appealed. Id. ¶ 15, Ex. O (EOIR Case Status Printout). Recently, the BIA dismissed Petitioner's appeal. See Respondents' Statement of Recent Decision (dkt. 24). Uc has filed a Petition for Review of that decision to the Ninth Circuit, as well as a Motion for Stay of Removal. See Petitioner's Supplement to Respondents' Notice of Recent Decision (dkt. 25) at 2.[2]

While Uc's withholding of removal efforts progressed, Uc was held in ICE custody for six months pursuant to the mandatory detention provisions of 8 U.S.C. § 1231(a)(6). Mot. for TRO (dkt. 2) at 5. He then became eligible for a bond hearing pursuant to Aleman Gonzalez v. Sessions, 325 F.R.D. 616, 620–29 (N.D. Cal. 2018), aff'd Aleman Gonzalez v. Barr, 955 F.3d 762 (9th Cir. 2020), rev'd Garland v. Aleman Gonzalez, 142 S. Ct. 2057 (2022).

On August 4, 2020, a different IJ conducted a bond hearing. Mahoney Decl. ¶ 16, Ex. U (Bond Order of the IJ). Under Aleman Gonzalez, ICE had the burden of proving by clear and convincing evidence that Uc was either a danger to the community or a flight risk. 325 F.R.D. at 628. The IJ found that ICE had not met its burden to show that Uc was a continued danger or a flight risk, and granted him release on bond of $2,000. Mahoney Decl. ¶ 26.

ICE did not move to stay the IJ's decision. Id. ¶ 27. Uc posted bond and was released on August 5, 2020. Id. ¶ 28. ICE appealed the IJ's bond decision in August 2020. Id. ¶ 29, Ex. R (BIA Order Revoking Bond). After ICE appealed, the IJ issued a memorandum decision explaining her analysis. Ex. Q (Bond Memorandum of IJ,

---

[2] Even more recently, ICE sent Uc an Appointment Notice instructing him to appear on October 3, 2022 for an interview and custody redetermination, and Uc failed to appear. See Joint Status Report (dkt. 26).

2

1   9/2/2020).

2       Uc's conduct while on bond was beyond reproach. See Order Granting TRO at 4–
3   5. Nearly two years passed. Then, on June 23, 2022, the BIA sustained ICE's appeal,
4   vacating the IJ's bond order, and ordered Uc detained without bond. Ex. R (BIA Order
5   Revoking Bond). The BIA concluded that "the [IJ] clearly erred in granting the
6   respondent bond because [ICE] met its burden of establishing that the respondent is a
7   danger to the community." Id.

8       On July 15, 2022, Uc was notified that his bond obligor had received a notice from
9   ICE ordering that the obligor produce Uc for an appointment at the San Francisco ICE
10  ERO Field Office on August 2, 2022 at 10:00 A.M. Mahoney Decl. ¶ 6, Ex. A (Notice to
11  Obligor). Uc filed a habeas petition on July 28, 2022, see Pet. (dkt. 1) and an ex parte
12  Motion for a temporary restraining order (TRO), see Mot. for TRO. He asked the Court to
13  "enjoin Respondents from re-detaining him unless and until he has had a hearing, as
14  required by the Due Process clause of the Fifth Amendment, to determine whether his re-
15  detention by [ICE] would be lawful." Mot. for TRO at 1; see also Pet. at 30. The Court
16  granted a TRO on July 29, 2022, and set a hearing for a motion for preliminary injunction.
17  See Order Granting TRO at 11.

18      The Court then held a hearing on Uc's motion for preliminary injunction, see Show
19  Cause Hearing; Transcript, and, upon further review, concluded that Uc was not likely to
20  succeed on the merits, see Order Denying MPI. The Court directed the parties to complete
21  their briefing on Uc's habeas petition. Id. That briefing is now complete.

22  **II.    LEGAL STANDARD**

23      Federal district courts may grant writs of habeas corpus if the petitioner is "in
24  custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C.
25  § 2241(c)(3). In immigration cases, federal district courts lack jurisdiction to review
26  "decision[s]" for which the statute grants "discretion" to the Attorney General. 8 U.S.C. §
27  1252(a)(2)(B). Federal district courts do have jurisdiction over "constitutional claims or
28  questions of law." Singh v. Holder, 638 F.3d 1196, 1202 (9th Cir.2011).

### III. DISCUSSION

Uc's habeas petition includes three counts. In Count One, he argues that he has a right to, and is being deprived, a pre-deprivation bond hearing with an IJ. Pet. at 13–22. In Count Two, he argues that the BIA's order revoking bond was legally infirm and violates due process. Pet. at 23–28. In Count Three, he argues that the BIA's order violates the Administrative Procedure Act (APA). Id. at 29. The Court is not persuaded on any of the three.

#### A. Count One: Due Process Right to Second Bond Hearing

Uc maintains that due process requires a second bond hearing following the BIA's reversal of the original IJ bond determination. The Court evaluates this claim using the balancing test from Mathews v. Eldridge, 424 U.S. 319 (1976). Mathews directs a court to consider (1) "the private interest that will be affected by the official action," (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Mathews, 424 U.S. at 335.

##### 1. Liberty Interest

As to the first Mathews factor, Uc argues that he has a protected liberty interest in his conditional release. Pet. at 13. At the TRO stage of this case, the Court accepted Uc's argument. See Order Granting TRO at 7 (noting that "[n]umerous courts in this district agree" that an individual like Uc "retains a weighty liberty interest under the Due Process Clause of the Fifth Amendment in avoiding re-incarceration."); see also Transcript at 2:25 ("you know, he does have a protectable liberty interest now under the case law.").

However, the Court notes that Uc's release on bond "was always subject to direct review and, therefore, the possibility of reversal." Ret. (dkt. 22) at 9. It is therefore meaningfully different from the interest at issue in Morrissey v. Brewer, 408 U.S. 471 (1972). Morrissey involved subsequent revocation of post-release parole for alleged violation of parole conditions, not appellate review of the original decision to parole the

4

petitioner. The court observed that implicit in the parole system is the "notion that the parolee is entitled to retain his liberty as long as he substantially abides by the conditions of his parole." Id. at 479. Here, though, Uc always knew that his release was subject to appellate review. He cannot reasonably "claim that the government promised him ongoing freedom or that he reasonably believed he would remain at liberty even after the BIA's decision so long as he complied with the terms of his conditional release." Ret. at 12[3]; cf. Reyes v. King, No. 19 Civ. 8674 (KPF), 2021 WL 3727614, at *11 (S.D.N.Y. Aug. 20, 2021) (no "due process right to a pre-detention hearing where a noncitizen, subject to pending removal proceedings and in the midst of litigating a dispute over the BIA's decision to revoke his bond, is at risk of being re-detained after being at liberty for more than two years.").

That Uc is seeking a bond hearing following the BIA's routine and foreseeable appellate review[4] distinguishes Uc's case from some of the other cases in this district upon which he relies. For example, in Ortega v. Bonnar, 415 F. Supp. 3d 963, 969–70 (N.D. Cal. 2019), Judge Orrick was considering a petitioner's liberty interest in remaining out on bond where the IJ initially granted bond but then reconsidered and vacated the bond order in light of the Supreme Court's opinion in Jennings v. Rodriguez, 415 F. Supp. 3d 963, 966 (N.D. Cal. 2019). Ortega explicitly did not involve a challenge to the initial detention or bond decision. Id. at 969; see also Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *1 (N.D. Cal. Aug. 23, 2020) (IJ sua sponte reconsidered release on bond; appeal to BIA remained pending).

---

[3] Uc does not agree that reliance is relevant to whether or not he has a liberty interest. See Traverse at 6–7. Even so, he argues, ICE's conduct, chiefly its decision not to seek a stay of the IJ's decision, led him to "reasonably believe he would not be re-detained without some process." Id. at 7. But that belief was not reasonable. ICE is not the BIA. However else ICE chose to proceed, it appealed the IJ's order to the BIA, arguing that Uc was a danger to the community. See Ex R at 82 of 192. The BIA was inevitably going to rule on the appeal. There was no implicit promise to Uc about the outcome of that ruling. Uc's release on bond pending appeal is not equivalent to the situation in Morrissey. See Morrissey, 408 U.S. at 479.

[4] The Court means only that, following ICE's appeal of the IJ's order, it was no surprise that the BIA ruled on the appeal. The Court recognizes that the substance of the BIA's ruling— reversing Uc's release on bond—was likely a surprise to Uc.

5

Uc's position also differs from the petitioner in Jorge M.F. v. Jennings, 534 F. Supp 3d 1050 (N.D. Cal. 2021). The petitioner there was detained pending removal proceedings pursuant to 8 U.S.C. § 1226(a), a statute that provides a mechanism for a custody determination by an IJ. The government there acknowledged that if the petitioner was taken into custody, "ICE would be required to give [him] the option of requesting a review of his custody determination,'" and so Judge Tigar commented that "[t]he only difference in the parties' positions is . . . whether a hearing to review Petitioner's custody determination would occur before or after detention." 534 F. Supp. 3d at 1055. Here, Uc was detained pursuant to 8 U.S.C. § 1231(a), and the Supreme Court recently clarified that noncitizens detained pursuant to § 1231 do not have a statutory right to a bond hearing after six months. See Johnson v. Arteaga-Martinez, 142 S. Ct. 1827, 1830 (2022); see also Diouf v. Napolitano, 634 F.3d 1081, 1086–87 (9th Cir. 2011) ("at the margin, § 1231(a)(6) detainees have a lesser liberty interest in freedom from detention" than § 1226(a) detainees where prolonged detention is not at issue).

While the Court continues to believe that Uc has a liberty interest, that interest is not as weighty as some.

### 2. Bond Hearing

The second Mathews factor is "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. at 335. Uc argues that he risks an erroneous deprivation of his liberty interest without an additional bond hearing. But Uc had a bond hearing before an IJ and an appeal. He was represented by counsel at both, submitted evidence, and received decisions on the merits. There is little risk of erroneous deprivation given such procedures. Moreover, a party who contends that the BIA requires further factfinding may file a motion for remand, see 8 C.F.R. § 1003.1(d)(3)(iv), something Uc did not do.[5]

---

[5] Uc argues that it is "absurd" for the government to argue that it was Uc's duty to seek a remand for additional factfinding, particularly as Uc had prevailed before the IJ. See Traverse (dkt. 23) at 12 n.5. The Court disagrees; it was Uc whose argument about dangerousness relied in part on his conduct while out on bond.

6

While additional procedural safeguards such as a post-appeal bond hearing—at which an IJ could consider Uc's entire history up until the date of that hearing—would have probative value, such procedures would also be problematic, as described below. Moreover, Uc has additional process available to him should he be re-detained: he can submit a re-evaluation request to ICE, see 8 C.F.R. §§ 241.13(d)(1) & (j), and he can file a petition for habeas corpus if he believes his detention is unconstitutional.

The third Mathews factor is "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. Uc contends that the government interest is "de minimis and far outweighed by Mr. Uc's interest in his freedom." Traverse at 11. But the government's interest in being able to "meaningfully appeal an IJ's bond determination to the BIA,"[6] Ret. at 17 (citing 8 C.F.R. § 1003.1(b), (d)), would be seriously undermined should this Court order that whenever the BIA reverses an IJ's bond order, a petitioner cannot be re-detained unless there is another IJ bond hearing.

Such a holding would be problematic for at least two reasons. First, it would thwart the Congressional design. Congress decided to entrust final review of bond decisions to the BIA. The government is permitted by law to appeal an IJ's bond decisions to the BIA, see 8 C.F.R. § 1003.1(b), and the BIA is to "function as an appellate body charged with the review of those administrative adjudications," see 8 C.F.R. § 1003.1(d). Second, such a holding makes little practical sense. It would mean that all that the BIA could do would be to effectively remand the case to the IJ for further proceedings, and if the IJ again ordered Uc released, and ICE appealed, BIA could again only effectively remand for further proceedings. The BIA's decision would never be final. See Transcript at 7:5–8:2 ("this

---

[6] The Court previously characterized the government interest by quoting from Ortega. Order Granting TRO at 8–9 (quoting Ortega, 415 F. Supp. 3d at 970) ("the government's interest in re-arresting Ortega without a hearing before an IJ is low."). But as discussed above, Ortega did not involve a petitioner's request for a bond hearing following the BIA's on-the-merits reversal of an IJ's bond order. See 415 F. Supp. 3d at 969–70. While the government's interest in re-arresting Ortega following an IJ's reconsideration and vacation of an earlier bond order in light of Jennings may not have been high, the government interest here is different because the posture of the case is different.

7

thing just bounces back. There is no logic behind it because the statutory scheme actually envisions that the BIA decision is a final decision.").

Accordingly, Uc's liberty interest does not entitle him to an additional bond hearing with an IJ before he can be re-detained following the BIA's order reversing his release on bond.[7]

### B.  Count Two: BIA Order Itself

Uc next argues that the BIA order of June 23, 2022, which reversed the IJ's bond order, is legally infirm and independently violates due process. Congress precludes judicial review of BIA discretionary decisions in post-removal proceedings, see 8 U.S.C. § 1252(a)(2)(B), 8 U.S.C. § 1226(e), but the Court retains jurisdiction where there are constitutional claims or questions of law, see Singh, 638 F.3d at 1202. Even so, "a petitioner may not create the jurisdiction that Congress chose to remove simply by cloaking an abuse of discretion argument in constitutional garb." Torres-Aguilar v. INS, 246 F.3d 1267, 1271 (9th Cir. 2001). "A decision by the BIA . . . violates due process if the proceeding was so fundamentally unfair that the alien was prevented from reasonably

---

[7] The Court recognizes that this result may appear especially unfortunate because nearly two years passed between the IJ's bond decision and the BIA's reversal of that bond decision on appeal, and because Uc did so well during that time. But the Court has no reason to believe that a twenty-two month delay is especially unusual. See Ret. at 12 (asserting that it is not) (citing Cong. Res. Serv., U.S. Immigration Courts and the Pending Cases Backlog 1, 17–18 (Apr. 25, 2022), available at https://crsreports.congress.gov/product/pdf/R/R47077; U.S. Dep't of Justice, Office of the Inspector General, Management of Immigration Cases and Appeals by the Executive Office of Immigration Review iii (Oct. 2012), available at https://oig.justice.gov/reports/2012/e1301.pdf); but see Traverse at 10 n.3 ("Appeals involving detention issues are an agency priority and tend to resolve much more quickly"). Nor does the Court find it unconstitutional. There will always be some period of time between the IJ's decision and the BIA's decision, during which a petitioner out on bond will live his or her life. Uc made the most of his time. But his argument that "[t]he regulations allowed ICE to seek an automatic stay of release pending appeal . . . which would have prevented Mr. Uc's release from the start," see Traverse at 12, cannot really have been his preference. Indeed, the government notes that "[b]ecause the BIA prioritizes appeals involving detained noncitizens, and because Petitioner was initially released on bond, the appeal of Petitioner's bond decision likely took more than one year longer than it would have if Petitioner had been in custody." Ret. at 13 n.6. As the Court noted at the motion hearing, a holding that "two years is too long," could also lead to consequences unintended by Uc, in which people in Uc's position are deported much more rapidly. See Transcript at 4:2–22; see also Traverse at 10 ("the Court need not find that any particular length of release is 'too long'").

presenting his case." Id. at 1270.

Uc argues that the BIA order violates his due process rights because (1) it failed to apply clear error review, (2) it failed to consider the passage of time, and (3) it has a "policy" of disregarding evidence of a petitioner's rehabilitation while incarcerated. Pet. at 24–28.

First, the BIA did not apply the incorrect standard of review. It stated as an initial matter that it reviewed "findings of fact determined by an Immigration Judge, including credibility findings, under a 'clearly erroneous' standard," and questions of law de novo. Pet. Ex. R (dkt. 1-2) at 82 of 192. Although the order made a somewhat confusing reference to de novo review, it did so in the same breath that it said that the IJ had "clearly erred," id. at 82 of 192 ("Upon de novo review, we agree with DHS that the Immigration Judge clearly erred in granting the respondent bond because it met its burden of establishing that the respondent is a danger to the community."), and before it went on to conclude that "her assessment of the respondent's future dangerousness is clearly erroneous," citing to a case that it characterized as holding that "an Immigration Judge's factual findings in bond proceedings are subject to clear error review," id. at 83 of 192. That is adequate. See Martinez v. Clark, 36 F.4th 1219, 1230–31 (9th Cir. 2022) ("we accept that the BIA 'applied the correct legal standard' if the BIA 'expressly cited and applied [the relevant caselaw] in rendering its decision.'").

Second, Uc is correct that the BIA's order did not consider the passage of nearly two years' time when evaluating Uc's dangerousness. See Ex. R. But Uc cites to no authority holding that the BIA was required to do so. See Pet. at 25–26 (collecting cases holding that an IJ should do so). Singh, 638 F.3d at 1206, which Uc cites, Mot. for TRO at 20; Pet. at 25; Traverse at 14, only holds that "immigration judges [should] consider . . . the recency" of criminal activity—it says nothing of the BIA. In re Guerra, 24 I&N Dec. 37 at *3 (2006), which Uc also cites, see Mot. for TRO at 20; Pet. at 25; Traverse at 14, also lists "the recency of" criminal activity as a factor that "[i]mmigration judges may look to," but does not speak to the BIA's role. And Calderon-Rodriguez v. Wilcox, 374 F.

9

Supp. 3d 1024, 1036 (W.D. Wash. 2019), which Uc cites as support for his assertion that "the BIA committed . . . legal error that deprived Mr. Uc of due process," see Traverse at 14, also involves an IJ's erroneous recency analysis. The BIA is an appellate body and is not permitted to engage in factfinding. See 8 C.F.R. § 1003.1(d)(1). While it apparently could have remanded to an IJ for more factfinding, see 8 C.F.R. § 1003.1(d)(3)(iv); Centro Legal de la Raza, et al. v. Exec. Off. for Immigration Review, 524 F. Supp. 3d 919 (N.D. Cal. 2021), Uc cites to no authority requiring it to do so.[8]

Third, there is no evidence that the BIA has a blanket policy of dismissing evidence of rehabilitation in custody out of hand. The BIA stated in Uc's order that "it is difficult to credit this length of sobriety due to the respondent's incarceration," and cited to previous BIA decisions giving diminished weight to sobriety or good behavior while in custody. See Ex. R at 33 of 192 to 84 of 192. That statement is not unconstitutional.

Accordingly, the BIA's order was not "so fundamentally unfair that [Uc] was prevented from reasonably presenting his case." See Torres-Aguilar, 246 F.3d at 1270.

### C. Count Three: APA Claim

Finally, Uc argues that "[f]or the same reasons the BIA's decision violated due process, it was arbitrary and capricious under the APA." Traverse at 15. The government responds that Uc's APA claim fails under 5 U.S.C. § 704, which provides that an APA claim is only viable where "there is no other adequate remedy." Ret. at 22–23. Even assuming that an APA claim could be viable, this one is not. For the same reasons the BIA's decision did not violate due process, it also did not violate the APA.

## IV.  CONCLUSION

For the foregoing reasons, the Court DENIES the habeas petition.

IT IS SO ORDERED.

Dated: October 14, 2022

CHARLES R. BREYER
United States District Judge

---

[8] Nor did Uc do so.